**O.K. PRECISION TOOL & DIE CO.**
**and Home Insurance Co., Movants,**

v.

**John Calhoun WELLS, Commissioner of Labor (Special Fund); Dora Goble; and Workers' Compensation Board of Kentucky, Respondents.**

Supreme Court of Kentucky.

Oct. 25, 1984.

Thomas M. Cooper, Landrum & Patterson, Lexington, for movants.

John E. Stephenson, Dept. of Labor, Louisville, for respondent John Wells.

Paul F. Guthrie, Lexington, for respondent Dora Goble.

Jackie H. Blankenship, Director, Dept. of Labor, Frankfort, for respondent Workers' Comp. Bd.

LEIBSON, Justice.

This is a workers' compensation case. The question is what principle controls apportionment of liability to the Special Fund where the Board finds that the employee has a "condition" which "is a result of her many years of work and should be classified as a gradual type of injury."

The employee, Dora Goble, developed a condition diagnosed as lateral epicondylitis, an inflammation of the tensor muscles near the elbow, more commonly known as "tennis elbow," caused by fifteen years of assembly line work imparting torque to a screwdriver. Her condition became disabling on August 13, 1980, only two and a half months after she had been employed at O.K. Precision Tool & Die Co. The Board concluded that her condition was not a traumatic injury occurring on the date her disability began, but "a gradual type of injury."

KRS 342.316(13)(a) provides for apportionment in certain occupational disease cases "which developed to the point of disablement only after an exposure of five (5) or more years" on a 75%–25% basis between the Special Fund and the last employer. Because there are similarities between the present condition and an occupational disease, the employer, O.K. Precision Tool, claims that Dora Goble's condition should be classified as an occupational disease under this section as a matter of law.

On the other hand, the Special Fund, citing as authority *Haycraft v. Corhart Refractories Co.*, Ky., 544 S.W.2d 222 (1977), claims that where there is a gradual type of injury resulting from the nature of the work, regardless of the limited period of employment for the last employer, the last employer is liable for the *entire* award.

The Workers' Compensation Board decided that the plaintiff had sustained a 50% occupational disability. Then, concluding that "the line of reasoning espoused by the Special Fund in its Brief appropriately states the law," the Board dismissed the claim as to the Special Fund and ordered the employer, O.K. Precision Tool, to pay the entire award.

Conversely, Fayette Circuit Court agreed with the employer. It decided that this was an occupational disease case under KRS 342.316(13) as a matter of law, and reversed and remanded to the Board with directions to bring in the Special Fund and award twenty-five percent against the employer, seventy-five percent against the Special Fund.

Next, the Kentucky Court of Appeals disagreed with the circuit court's classification as an occupational disease, and reversed with instructions to reinstate the award of the Workers' Compensation Board assessing all liability against the employer.

We accepted discretionary review to consider what rule is appropriate in this situation where the injury is attributable to the nature of the work and the Board found that it should be "classified as a gradual type of injury," but only a portion of the injury is attributable to the last employment.

■ We disagree with both previous applications of the Workers' Compensation law to the facts of this case. The Board's classification as a "gradual type of injury" caused by the nature of the work rather than a "occupational disease" compensable under KRS 342.316, is commensurate with the facts. However, *Haycraft v. Corhart* ° *Refractories* does not mandate that the employer for whom the employee is working at the time the disability from a gradual type of injury manifests itself is "at risk" for the entire award where, as here, the *last* employer was not the *only* employer. The interpretation of *Haycraft* found in another recent Court of Appeals case differently decided, *Southern Ky. Concrete Contractors v. Campbell*, Ky.App., 662 S.W.2d 221 (1983), providing for apportionment in this situation, is correct.

*Haycraft* involved a gradual type of injury occurring over many years of employment, but the entire period of employment was with the same employer. For this reason the employer was liable for all disability "attributable to the work." The Special Fund, the Board, and the Court of Appeals, have erred in concluding that the results in *Haycraft* apply here. On the contrary, we conclude that this case fits squarely within the apportionment principle expressed by KRS 342.120 which applies when the employee has a pre-existing nondisabling condition "aroused or brought into disabling reality by reason of a subsequent compensable injury," resulting in a "combined" disability greater than that which would have resulted from either alone. Therefore, we reverse both prior interpretations of the law in this case and remand to the Workers' Compensation Board to apportion under KRS 342.120.

Before 1972 the language of the Workers' Compensation law, strictly construed, limited compensation to injury from a work related traumatic event or occupational disease. There was no leeway to grant a compensation award for a gradual type of injury such as that which occurred here or

in the *Haycraft* case[1] unless it could be classified as an occupational disease. In *National Stores, Inc. v. Hester*, Ky., 393 S.W.2d 603 (1965), cited by the movants, we avoided the noncompensable nature of a work related gradual type of injury where there was no specific traumatic event by classifying it as an occupational disease.

As noted in the *Haycraft* case, in 1972 the General Assembly reworked the definition of the word "injury" to mean "any work related harmful change in the human organism." Further, the 1972 amendments reworded KRS 342.120(1)(b) to expand the liability of the Special Fund, previously limited to a situation where there was a "dormant disabling disease condition," to include pre-existing "disease *or* condition," (emphasis added) "thus shifting liability from the employer to the Special Fund for the portion of the workman's disability ascribable to a pre-existing nondisabling condition that was not a 'disease.' " *Haycraft v. Corhart Refractories Co., supra*, 544 S.W.2d at 224–25.

The Special Fund's Brief states that "when the legislature reworked the definition of injury, it made provision for 'injury' to cover the situation in which a person is subjected to minor traumas over a period of years and develops a gradual type of injury." Brief for Appellee at 6. We agree. However, we disagree with the Special Fund that *Haycraft* goes further and requires the last employer to bear the entire liability for this gradual type of injury where it is not the only employer.

The reason for apportionment in *Haycraft* was because the condition involved degenerative disc changes unrelated to employment as well as gradual type injury related to the work, whereas here we have a work related condition pre-existing present employment. But KRS 342.120 does not restrict pre-existing conditions to degenerative changes unrelated to employment. The language of the statute creating the Special Fund is broad enough to cover a pre-existing condition mechanically

---

**1.** In the *Haycraft* case the employee's problem did not relate to "one specific instance," but rather represented a "chronic back problem." *Haycraft, supra* at 227.

induced by the nature of past employment, such as the present case, as well as degenerative changes unrelated to employment.

In *Haycraft* all of the work was with one employer. When we referred in that case to the employer bearing the entire award where the condition is related to the nature of the work, the only "work" involved was with the one employer, so, perforce, "the work" referred to the work with that employer.

It would be arbitrary and unreasonable to interpret *Haycraft* to mandate that the last employer is "at risk" for the entire condition if induced by work performed over many years with multiple employers. Further, it would conflict with a reasonable interpretation of the language in KRS 342.-120. And finally, it conflicts with the legislate purpose for establishing the Special Fund.

The legislature intended to encourage the employment of persons having health problems which could affect the degree of disability in the event of subsequent injury. *Yocom v. Jackson*, Ky.App., 554 S.W.2d 891, 894 (1977). See also 2 A. Larson, *The Law of Workmen's Compensation*, § 59.-31(a) (1976). In *Transport Motor Express, Inc. v. Finn*, Ky., 574 S.W.2d 277, 280–81 (1978), we noted that the purpose for this section "is to prevent the employer from being held responsible for more of a compensation award than is attributable to a disability incurred in the course of an employee's employment with him—a result viewed as particularly unjust to employers and which encourages discrimination against disabled workers in hiring policies." If we were to hold that the last employer takes responsibility for the entire injury in a case such as the present one, our decision would conflict with the purpose of the statute. It would indeed be an absurd result.

This is a case where the nature of the work over a period of years caused the entire problem. The difference from *Haycraft* is that in *Haycraft* all of the work was with one employer. Here only a small percentage of the work was with the last employer, O.K. Precision Tool.

Apportionment of liability to the Special Fund for occupational disease arising in part with the last employer has been given special treatment in KRS 342.316. The employer, O.K. Precision Tool, has urged us to classify Dora Goble's condition as an occupational disease, so as to trigger the application of this statute. The trial court adopted this approach to the present problem. Assuming that before the 1972 Amendments broadening the definition of injury to include the present situation, it was appropriate to broadly construe the meaning of occupational disease so that the Worker's Compensation law could accommodate a situation such as the present one, which would be otherwise noncompensable (*see generally National Stores, Inc. v. Hester, supra*), such is no longer the case. There is no need to call a horse a mule as a matter of law simply because we need an animal to pull the load. In 1972 the General Assembly provided a horse to do the work.

■ It is for the doctors to testify, and for the Board to find as a fact, what should be classified as a gradual type injury and what is an occupational disease. The Special Fund argues that "a disease as contemplated by the statute" means "a systemic disorder which affects the entire organism or bodily system." The Workers' Compensation law does not define "occupational disease," except to say it "means a disease arising out of and in the course of the employment." KRS 342.620(2). Except as to diseases expressly labeled as occupational diseases in the Workers' Compensation law, the question what is an injury and what is a disease is a question of fact for the Board to decide based on appropriate evidence. The trial court erred in holding that the present condition constituted an occupational disease subject to KRS 342.-316, as a matter of law.

■ The Special Fund claims that because the employer, O.K. Precision Tool, and its insurance carrier have argued this case primarily on the theory that the Spe-

cial Fund is liable to apportionment because the employee's condition should be classified as an occupational disease under KRS 342.316, they have waived their apportionment argument under KRS 342.120. However, the employer's position has been that it was entitled to apportionment under one theory or another. The employer's right to apportionment under a proper interpretation of *Haycraft* and KRS 342.120 is sufficiently preserved so as to entitle the employer to relief in the present circumstances.

As referred to earlier in this opinion, in *Southern Ky. Concrete Contractors v. Campbell*, Ky.App., 662 S.W.2d 221 (1983), the Kentucky Court of Appeals reached a proper interpretation of the Special Fund's liability in present circumstances. In that case the employee suffered from an occupational disability, back and hip problems, developing from years of heavy labor. The Court of Appeals stated:

"In *Haycraft*, the Court apportioned liability to the employer based upon the percentage of disability attributable to the work. Haycraft spent his entire career with one employer, but Campbell, in the instant case, spent only a small part of his career with Southern. We believe that the 'work' referred to in *Haycraft* is the 'work' that occurred while the claimant was in the employ of that company." 662 S.W.2d at 222.

The Court of Appeals then remanded the case to the Workers' Compensation Board with directions:

"[T]o determine the percentage of Campbell's disability attributable to the work performed by him while employed by Southern, and Southern is to be liable to that extent. Absent evidence to the contrary, Southern shall be liable for that percentage of Campbell's disability which is equal to the percentage of Campbell's worklife spent with Southern. The remainder of his disability is the responsibility of the Special Fund." *Id.* at 222–23.

This decision by the Kentucky Court of Appeals in *Southern Ky. Concrete Contractors v. Campbell, supra,* is consistent with the Workers' Compensation law as presently structured, and is appropriate to the present case.

We remand the case to the Workers' Compensation Board to apportion liability in conformity with this opinion.

All concur except STEPHENS, C.J., not sitting.