John Calhoun WELLS, Secretary, Labor Cabinet (Special Fund), Appellant,

v.

Mary Hurt BOYD, Eaton Corporation, Cutler Hammer and Workers' Compensation Board of Kentucky, Appellees.

Court of Appeals of Kentucky.

Sept. 12, 1986.

David R. Allen, Labor Cabinet (Special Fund), Louisville, for appellant.

Ray B. White, Bowling Green, for Mary Hurt Boyd.

James H. Lucas, Keith Carwell, Bowling Green, for Eaton Corp./Cutler Hammer.

Before DYCHE, HOWARD and WIL-HOIT, JJ.

HOWARD, Judge.

This case is an appeal by the Special Fund concerning the apportionment of liability between the employer and the Special Fund with regard to an award by the Workers' Compensation Board.

The appellee, Mary Hurt Boyd, was employed by the appellee, Eaton Corporation/Cutler Hammer. Boyd's employment consisted, in part, of moving 15 lb. to 18 lb. trays of parts for assembly. Boyd moved these trays numerous times during a day over a period of 15 years.

Boyd suffered from back pain and associated problems. These problems had become progressively worse, particularly in the year prior to a visit to a physician on August 19, 1981. Following the administration of various tests, surgery was performed, during which a herniated disc in Boyd's lower back was found and repaired. Boyd has not returned to work since the surgery.

Boyd applied to the Workers' Compensation Board for compensation for a work-related injury. August 19, 1981, the date of her initial visit to a physician, was listed as the time of injury. However, it was clear from the face of the application that no specific injury was alleged, but Boyd claimed the nature of her work was the cause of her back condition and subsequent disability.

Dr. V.L. Fisher, Boyd's treating physician and the only physician to testify, stated that Boyd had some degenerative changes in her lower back. He further stated that he had performed surgery on Boyd's lower back and that she had a 20% functional impairment. Further, Dr. Fisher testified that Boyd cannot return to the former employment or any job involving repetitive lifting or bending. In Dr. Fisher's opinion, the nature of her job with Eaton/Cutler Hammer over such a length of time was the "causative factor" of her condition.

The Board found that Boyd had suffered a work-related injury of appreciable proportions of a permanent nature. As a result of this injury, the Board further found that Boyd had sustained a 100% disability. The award was apportioned 50% to the employer and 50% to the Special Fund.

The Special Fund appealed the Board's decision to the Warren Circuit Court. The Special Fund did not challenge the award to Boyd. The principal grounds for the appeal was that the Board erroneously failed to follow the correct procedures in apportioning liability in cases of this type as outlined in *Haycraft v. Corhart Refractories Co.*, Ky., 544 S.W.2d 222 (1976). The Warren Circuit Court affirmed the Board's decision.

The Special Fund appeals to this Court, contending again that the Board acted improperly in apportioning liability.

In *Haycraft, supra,* the claimant before the Workers' Compensation Board had worked for the same employer continuously for 17 years. All of the work he performed involved hard physical labor such as using a sledgehammer and lifting heavy objects and materials. The claimant had experienced difficulty with his back during his employment, but he developed severe pain in his back and left leg in April of 1974. The medical testimony showed that the claimant had degeneration in the discs of his lower spine prior to the onset of the severe pain. The medical testimony differed on the extent a non-work-related injury suffered immediately prior to the occurrence of the pain may have contributed to his disc problems. However, the physi-

cians were unanimous that the nature of the claimant's job aggravated his condition.

The Board had dismissed the employee's Workers' Compensation claim. The Court reversed and went on to hold:

We are therefore of the opinion that if it be found, or should be found, that the nature and duration of the work probably aggravated a degenerative disc condition to the degree that it culminated in an active physical impairment sooner than would have been the case had the work been less strenuous, to that extent the preexisting condition is itself an injury as now defined in KRS 342.620(1), and that compensation for a disability to which it has contributed should be apportioned between the employer and the Special Fund as follows: (1) to the Special Fund, that portion of the disability that probably would exist regardless of the work; (2) to the employer, the remainder, being the percentage attributable to the work.

*Haycraft, supra,* at 225.

To further explain its ruling in *Haycraft, supra,* the Court stated in footnote #10 at 228:

Though KRS 342.120(3) [now KRS 342.-120(4)] provides that when a previously existing condition that is nondisabling becomes disabling through the agency of a work related injury the employer shall be liable only for such portion (if any) of the disability as would have resulted from the injury in the absence of the pre-existing condition, we construe that provision as applicable only to a pre-existing condition that is not attributable in any degree to the work. What we hold here is that a dormant pre-existing condition, or predisposition to injury, which itself is work related, falls in a different category.

It seems clear that the "nature and duration" of Boyd's work "aggravated" her disc condition to the degree that her active disability was accelerated. In fact, Dr. Fisher testified to this effect when asked a question by Boyd's counsel, incorporating the very terms used by the Court in *Haycraft.* Thus, the apportionment schedule outlined

in *Haycraft* would appear to be the proper method to be followed by the Board.

However, the Board did not mention *Haycraft* in its finding or use its formula in apportioning the award. Rather, the Board followed *Young v. Fulkerson,* Ky., 463 S.W.2d 118 (1971), in the apportionment. The *Young* procedure is basically for the apportionment of liability in those cases where a pre-existing disability (or a dormant, nondisabling disease condition) and a subsequent work-related injury combine to create an occupational disability greater than either would have alone.

The Board spoke of Boyd's injury on August 19, 1981. The Court in *Young, supra,* also discussed the apportionment procedure in terms of a specific "subsequent injury." Boyd, however, did not receive any specific injury at all. August 19, 1981, is merely the date she saw a physician because the back pain had worsened over the previous year.

In *Haycraft,* at 225, the Court noted that prior to 1972, unless a disability, such as a spinal disc condition, arose or was aroused by a particular incident at work, it was simply not compensable under the prevailing law because it was deemed to be the result of a normal degenerative process rather than work. The Court went on to state that in view of changes in the Workers' Compensation Act made by the General Assembly in 1972, such a construction was too restrictive. The Court then outlined the proper procedure to be followed in apportioning liability in cases involving spinal disc conditions as discussed *supra.* It should be noted that *Young, supra,* was decided in 1971.

The employer cites *O.K. Precision Tool & Die Co. v. Wells,* Ky., 678 S.W.2d 397 (1984), as support for its position. We do not read *Wells, supra,* as providing support for the employer's position at all.

The issue in *Wells* was that when a gradual type of injury, lateral epicondylitis or "tennis elbow," was sustained by an employee from over 15 years of assembly line work "imparting torque to a screwdriver,"

could liability be placed entirely on the last employer for whom the employee worked only two and one-half months. The Court held that the last employer could be held liable only for a percentage of the disability based on the percentage of the employee's work life spent with the last employer and the remainder was the responsibility of the Special Fund.

In reaching its decision in *Wells,* the Court discussed *Haycraft* and reaffirmed its principles. The Court noted that the only significant difference between that case and *Haycraft* was that in Haycraft all of the work was with one employer, whereas only a small fraction of the employee's work was with his last employer.

Therefore, we conclude the Board erred in failing to apportion liability in accordance with the principles of *Haycraft.*

The judgment is reversed with directions to remand the case to the Workers' Compensation Board for reconsideration of the apportionment of liability in conformity with this opinion.

All concur.