ALCAN FOIL PRODUCTS, A Division of Alcan Aluminum Corp., Appellant,

v.

Kenneth R. HUFF; John L. Cox; Robert G. Grant; Reynolds Metals Company; Ron Christopher, Director of Special Fund; Richard H. Campbell, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 98–SC–678–WC.

Supreme Court of Kentucky.

June 17, 1999.

James Gordon Fogle, William A. Miller, Sr., Ferreri, Fogle, Pohl, & Picklesimer, Louisville, for appellant.

Robert W. Grant, Louisville, for appellees Huff, Cox, and Grant.

Larry L. Johnson, William P. Swain, Douglas A. U'Sellis, Boehl, Stopher, & Graves', Louisville, for appellee Reynolds Metals Co.

Joel D. Zakem, Labor Cabinet—Special Fund, Louisville, for appellee Christopher.

## OPINION OF THE COURT

This workers' compensation appeal involves three claims for occupational hearing loss due to the cumulative effect of many years of exposure to loud noise. The claims were filed by longtime employees of the business owned by the appellee, Reynolds Metals Company (Reynolds Metals), beginning on July 1, 1995. The appellant, Alcan Foil Products (Alcan), owned the business from 1985 until June 30, 1995. The appeal concerns whether the Administrative Law Judge (ALJ) properly determined that each of the claims arose when the worker became aware that he had sustained a significant hearing loss which was caused by work and that each claim was barred by the two-year period of limitations which is set forth in KRS 342.185.

It is not disputed that the workers were exposed to loud noise for many years in their work and that the exposure caused each worker to sustain a work-related hearing loss. The use of hearing protection became mandatory on September 8, 1993. The finding that each worker's last injurious exposure occurred before that date is undisputed, as is the ALJ's determination that no liability could be assessed against Reynolds Metals. Each worker testified that his hearing loss had developed gradually, over the years, but that it had grown worse in the last couple of years. In each instance, the worker had difficulty hearing speech when there was background noise, a factor which Dr. Hawkins pointed out would be dangerous in a factory-type work setting, particularly when hearing protection was used. The physician also pointed out that this type of hearing loss was particularly disadvantageous in occupations which required oral communication.

## I.

Appellee Cox's birthdate is October 2, 1935. He has an eighth grade education. He testified that he began to work for the business in 1954 and that his employer had conducted annual audiological examinations beginning in 1967. Everyone who tested him indicated that he had some hearing loss, and he had assumed that the hearing loss was due to work ever since testing was begun. Dr. Hawkins testified that Cox's functional impairment was 2% but that a more realistic estimate was 5% for the purposes of conversational speech. Based upon reports of the annual audiological examinations, he testified that a hearing loss was evident as early as 1967, with very little progression since the mid–1970's. He indicated that the present restrictions were the same as would have been imposed at that time and that any difference in the 1992 and 1995 test results was not statistically significant. Dr. Cohen agreed that testing was very similar from 1976 on.

The ALJ noted that Cox had missed no work due to his condition and that he continued to work full-time. Cox's level of impairment was deemed to be so minimal that it was without an appreciable occupational effect; therefore, only medical benefits would be authorized. The ALJ determined that Cox knew of his hearing loss and its cause before 1985, that any present restrictions and limitations were applicable in the 1970's and 1980's, and that there had been no progression of the condition since 1992. Based upon those findings, the ALJ concluded that the claim was barred by KRS 342.185 because it was not filed until September 7, 1995.

## II.

Appellee Grant's birthdate is January 10, 1935. He has a high school education. He testified that he had undergone annual audiological examinations beginning in 1973 and acknowledged that his employer had informed him of a hearing impairment but asserted that he was not aware that the condition was disabling or work-related until August, 1995. Dr. Hawkins testified to a 10% functional impairment. He indicated that a mild hearing loss was apparent in 1973 and that any present restrictions would have applied as of the mid 1980's. He reported no significant loss between October, 1993, and June, 1995. Dr. Cohen reported a 23% impairment and indicated that testing in 1972 and 1973 was very similar to later testing. He indicated that he had recommended hearing aids in 1992, and Grant indicated he wanted to see if the cost would be paid by workers' compensation.

Noting that Grant continued to work, the ALJ determined that Grant had sustained an occupational disability but that it did not exceed the 10% functional impairment. After reviewing the medical testimony, the ALJ concluded that Grant experienced symptoms of his condition and knew of its relation to work no later than February 29, 1992. The condition had not progressed since then. Because the claim was not filed until September 7, 1995, the ALJ concluded that it was untimely.

## III.

Appellee Huff's birthdate is September 22, 1935. He has a tenth grade education, GED, and no specialized training. He retired effective October 1, 1995, at age 60, and testified that his hearing loss was not a factor in his retirement. He testified that he had undergone annual audiological examinations beginning in 1967. He acknowledged that he was advised of a hearing loss after each test and that he connected the hearing loss to his employment from the outset. Dr. Hawkins assessed a 12% functional impairment. He indicated that a hearing loss was apparent in 1967 and that present restrictions and limitations would have been applicable then. He also indicated that the condition would have been apparent to Huff both in the workplace and socially by 1976–77. Dr. Cohen assessed a 30% impairment and

noted that there was little change in the condition after 1987.

The ALJ determined that Huff had sustained a 30% occupational disability due to hearing loss. The ALJ also determined that Huff knew of his hearing loss no later than 1987, that he knew of its relation to work from the outset, and that there was no worsening of the condition after 1987. Because the claim was not filed until September 5, 1995, the ALJ concluded that it was barred by KRS 342.185.

### IV.

The workers appealed, asserting that the ALJ misapplied the decision in *Randall Co. v. Pendland,* Ky.App., 770 S.W.2d 687 (1989). They argued that they were not occupationally disabled until shortly before their claims were filed because they were able to work and because no limitations, disability rating, or work restrictions were imposed until Dr. Hawkins did so in the summer of 1995. They concluded that although their hearing loss was present before that time, they did not have a claim until the condition became occupationally disabling. Emphasizing that the condition did not interfere with work and the fact that the workers did not miss work due to the condition, the Workers' Compensation Board (Board) reversed the decision of the ALJ. The Court of Appeals affirmed, and this appeal by Alcan followed.

Alcan asserts that it was the Board and the Court of Appeals who misapplied *Pendland* and that the period of limitations set forth in KRS 342.185 runs from the date of injury. Alcan explains that if *Pendland* stands for the proposition that the period of limitations does not begin to run until the manifestation of occupational disability, a claim for medical benefits relative to a gradual injury would be premature until the affected worker became occupationally disabled. For that reason, Cox's claim for medical benefits would be premature because he suffers from no occupational disability. KRS 342.020.

KRS 342.185 provides that notice of an "accident" shall be given "as soon as practicable" and that a claim for benefits relative to a resulting injury must be filed within two years after the suspension of voluntary payments by the employer or two years after the "date of accident," itself, whichever is later. Chapter 342 provides that a delay in giving notice may be excusable; however, it permits no such leeway for a failure to file a timely workers' compensation claim. Although the entitlement to workers' compensation benefits stems from the fact that an occupational injury was sustained, the period of limitations runs from the date of the "accident" which caused the injury. Except in instances where the onset of occupational disability is simultaneous with the accident which caused it, the period of limitations for a work-related injury does not run from the date of "disability" as it is defined by KRS 342.0011(11). Although a finding of occupational disability is required for an award of income benefits, the onset of occupational disability has no bearing on determining the date from which the period of limitations begins to run or on determining an injured worker's entitlement to medical benefits. KRS 342.020; See also, *Calvin v. Lake Construction Co.,* Ky., 451 S.W.2d 159 (1970); *Allen v. Com., Dept. of Highways,* Ky., 425 S.W.2d 283, 285 (1968); *Mountain Clay, Inc. v. Frazier,* Ky.App., 988 S.W.2d 503 (1999). Similarly, except in instances where the injury is apparent immediately after the accident which caused it, the period of limitations does not run from the onset of physical or functional disability/impairment or from the worker's discovery of the injury. The two-year period of limitations operates as a period of repose for injuries caused by a single traumatic event and bars a rule of discovery for latent injuries; therefore, a worker may not become aware that an injury was sustained until more than two years after the accident which caused it, after the period of limitations has expired. *Coslow*

*v. General Electric Co.*, Ky., 877 S.W.2d 611 (1994).

The legislature has chosen to enact different and more liberal rules for claims which involve an occupational disease. KRS 342.316(3)(a) employs a three-year period of limitations which runs from the last injurious exposure or discovery of an occupational disease, whichever occurs last; however, it also contains a five-year period of repose which runs from the last injurious exposure. The determination of what is an injury and what is a disease is a question of fact to be determined from the evidence. *O.K. Precision Tool & Die Co. v. Wells*, Ky., 678 S.W.2d 397 (1984). Consistent with the medical testimony, these hearing loss claims were practiced as claims for a gradual occupational injury due to cumulative trauma and are subject to the requirements of KRS 342.185.

With regard to those injuries which develop gradually from the cumulative effect of wear and tear or minitrauma sustained in the course of the worker's employment, much of the trauma giving rise to the ultimate injury commonly occurs more than two years before the onset of symptoms makes the worker aware that an injury has been sustained. In addition, if the nature of the work remains unchanged, the worker is continuously subjected to "accidents" for so long as the same employment continues. Despite the number of gradual injury claims and the difficulties encountered in attempting to apply KRS 342.185 to those claims, the legislature has not chosen to create special rules to govern the period of limitations for claims for gradual injury such as exist for occupational disease. It has been left to the courts to fashion a solution for applying the "date of accident" language of KRS 342.185 to questions regarding notice and limitations in gradual injury claims.[1] Although the

concept of a gradual, work-related injury was recognized in *Haycraft v. Corhart Refractories Co.*, Ky., 544 S.W.2d 222 (1976), and the apportionment of liability for a gradual injury was addressed in *Jones & Laughlin Steel Corp. v. Goben*, Ky.App., 600 S.W.2d 481 (1980), the question of how to apply KRS 342.185 to a claim for gradual injury first arose in *Randall Co. v. Pendland*, Ky.App., 770 S.W.2d 687 (1989).

In *Pendland*, the worker suffered from a degenerative arthritic condition from which she had experienced some hand pain for several years. It could not be determined whether work had caused the condition; but it was established that work aggravated the condition and increased the wear in the worker's thumb joints. Her pain became increasingly severe, particularly in the six months before she quit work on January 14, 1983. After undergoing hand surgery, she returned to work for a short time but had to quit entirely in September, 1984. She filed a workers' compensation claim on January 7, 1985. The "old" Board resolved the question of limitations by determining that the "injury" occurred on January 14, 1983, and that the claim was timely filed.

In addressing the employer's appeal of that determination, the court first departed from the "date of accident" language contained in KRS 342.185 and determined that the two-year period of limitations ran from the date of "injury." 770 S.W.2d at 688. Then, the court recognized that the injury actually began when the worker performed the first of some 2,000 repetitive motions per day which eventually resulted in her disability. The court noted that, although the worker began to experience significant pain some six months before quitting work on January 14, 1983, there was no evidence which compelled a finding of occupational disability before

---

1. In 1996, the legislature amended the definition of "injury" contained in KRS 342.0011(1). As amended, it includes "any work-related traumatic event or series of traumatic events, including cumulative trauma." 1996 Ky.Acts (1st Ex.Sess.) ch. 1, § 1. The legislature also enacted KRS 342.7305 to govern claims for traumatic hearing loss. 1996 Ky. Acts (1st Ex.Sess.) ch. 1, § 38. KRS 342.185 was not amended.

that date; therefore, the finding of timeliness was affirmed. The court explained:

> If we held that in an injury case of this type the claim had to be made within two years of the initial trauma, we might be considering the first time she performed her thumb maneuver 26 years ago, or it might be the first time she aggravated her degenerative arthritis, but in neither case would we know that a compensable injury had occurred. We therefore conclude that in cases where the injury is the result of many minitraumas, the date for giving notice and the date for clocking a statute of limitations begins when the disabling reality of the injuries becomes manifest.

770 S.W.2d at 688. *Pendland*, therefore, recognized that precisely because an injury from the cumulative effect of minitrauma develops gradually and imperceptibly, the worker will not be aware that a work-related injury has been sustained until the injury manifests itself in the form of physically and/or occupationally disabling symptoms. For that reason, the court effectively adopted a rule of discovery for the purposes of notice and limitations. The court clearly indicated that in some instances the manifestation of disability (and, therefore, the period of limitations) would begin before the last day of the employment, making it clear that the court was not adopting the fiction, which is based upon KRS 342.316(3)(a) and employed in occupational disease claims, that a worker is not occupationally disabled for so long as the same full-time employment continues. See *Allen v. Com., Department of Highways*, Ky., 425 S.W.2d 283 (1968).

 In *Pendland*, the worker became aware of her injury when she experienced disabling symptoms of pain; thus, the manifestation of physical and occupational disability occurred at the same time.

The question remains, therefore, whether the phrase "manifestation of disability" refers to the physical disability or symptoms which cause a worker to discover that an injury has been sustained or whether it refers to the occupational disability due to the injury. We conclude that it refers to the worker's discovery that an injury had been sustained. We arrive at this conclusion for several reasons: 1.) the court's explicit statement that the period of limitations runs from the date of "injury;" 2.) the fact that the definition of "injury" contained in KRS 342.0011(1) refers to any work-related harmful change in the human organism, and does not consider whether the change is occupationally disabling; and 3.) the entitlement to workers' compensation benefits begins when a work-related injury is sustained, regardless of whether the injury is occupationally disabling. Nothing in *Pendland* indicates that the period of limitations should be tolled in instances where a worker discovers that a physically disabling injury has been sustained, knows it is caused by work, and fails to file a claim until more than two years thereafter simply because he is able to continue performing the same work.[2] We also note that a worker's ability to perform his usual occupation is not dispositive of whether he has sustained an occupational disability. *Wells v. Bunch*, Ky., 692 S.W.2d 806 (1985); *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968). Contrary to the view expressed by the Board and the Court of Appeals, a worker is not required to undertake less demanding work responsibilities or to quit working entirely in order to establish an occupational disability.

Unlike the situation in *Pendland*, the ALJ who considered the instant claims determined that the applicable date of injury occurred more than two years before

---

**2.** This conclusion is strengthened by the fact that *Pendland* also determined that the notice requirement arose with the manifestation of disability. One of the purposes of the notice requirement is to give the employer an opportunity to take measures to minimize the extent of the worker's impairment and, hence, the employer's liability. *Harlan Fuel Company v. Burkhart*, Ky., 296 S.W.2d 722, 723 (1956). To accomplish that purpose, notice must be given when the worker discovers that a gradual work-related injury has been sustained.

each claim was filed. Because these workers had the burden of proving every element of their claims, and each worker failed to demonstrate that his claim was filed within two years of the manifestation of the disabling, work-related hearing loss for which benefits were sought, the question upon which each of these appeals turns is whether the evidence in any of these claims compelled a finding in the worker's favor. *Special Fund v. Francis,* Ky., 708 S.W.2d 641 (1986).

It is clear that the workers were aware of their work-related hearing loss for many years before their claims were filed. The audiometric evidence established that the level of impairment upon which the claims of occupational disability were based was in existence more than two years before the claims were filed and had not changed in more than two years before that date. The evidence supported the ALJ's determination that no appreciable worsening of the condition had occurred within two years of the filing of the claims. The medical evidence also established that the work restrictions which were imposed at litigation also would have been imposed more than two years before the claims were filed had the workers sought medical advice at the time. Under those circumstances, the claims were properly dismissed, and the decision of the ALJ should not have been reversed on appeal. In view of this conclusion, it is unnecessary for us to address the other questions raised by this appeal.

The decision of the Court of Appeals is hereby reversed, and the decision of the ALJ with regard to each of these claims is hereby reinstated.

All concur.