**TOYOTA MOTOR MANUFACTURING, KENTUCKY, INC., Appellant,**

v.

**Linda CZARNECKI; John B. Coleman, Administrative Law Judge; and the Workers' Compensation Board, Appellees.**

No. 2000–CA–000773–WC.

Court of Appeals of Kentucky.

March 30, 2001.

H. Douglas Jones, J.R. Schrand, Greenebaum, Doll & McDonald, Covington, KY, for Appellant.

Lois T. Matl, Lois T. Matl & Associates, Lexington, KY, for Appellees.

Before GUIDUGLI, McANULTY, and TACKETT, Judges.

## OPINION

TACKETT, Judge:

This case is before us on a petition for review of the decision of the Workers' Compensation Board (the Board), reversing the decision of the Administrative Law Judge (ALJ). The ALJ held that the claim of Linda Czarnecki (Czarnecki) against Toyota Motor Manufacturing, Inc. (Toyota) for a work related shoulder injury was partially barred by the statute of limitations, Kentucky Revised Statute (KRS) 342.185. Toyota argues that the ALJ was correct in holding that the claim was partially barred by the statute of limitations and that the Board improperly substituted its judgment for the ALJ with respect to a question of fact. We affirm the decision of the Workers' Compensation Board.

Czarnecki worked in the paint finishing and PVC/anti-chip departments during her tenure with Toyota. Her duties in both capacities included a great deal of overhead work painting and using a sander, wherein her arms were stretched above her shoulders. Czarnecki first reported an injury to her shoulder in 1990, when she was diagnosed with a right pectoralis strain. The injury was considered resolved later that year. Subsequent shoulder complaints occurred in December 1991 and January 1992. Czarnecki was seen by physicians for the next two years for a variety of complaints, but none of these included shoulder injuries. It must be noted at this point that Czarnecki was treated by Toyota's Industrial Health Services (IHS) department, and that she had seen IHS for several different complaints, including a recurring condition in her wrist as well as foot, knee, and eye problems. While only the shoulder injury is the subject of the claim, the IHS records form a very complete picture of Czarnecki's overall health and condition over the course of her employment. It is also important to

note that Toyota's employees are required to see IHS for all complaints, all medications, and treatments which are ordered by private physicians if it relates to their work in any way, as well as being required to see IHS physicians if injured at work.

In January 1994, Czarnecki complained again of her shoulders hurting. In February, she was diagnosed with "mild to moderate rotator cuff irritation" and placed on restrictions which included no overhead work for two out of every four hours. The restrictions were lifted in March, but within ten days she had similar though reduced symptoms. Her treatment continued and the restrictions were reduced in July. In January 1995, an IHS physician's report indicated that her shoulder problems were resolved. Over the next fifteen months, she was seen for a variety of problems, none of which was related to her shoulder.

In April 1996, she complained again of right shoulder pain and a stiff neck, and was assessed with right bicipital tendonitis, put on restrictions, and given physical therapy. In July, she sought treatment from an orthopedic surgeon, Dr. Ben Kibler. Dr. Kibler found anterior impingement in the right shoulder and a clinical picture of rotator cuff tendonitis. An MRI revealed no tear or inflammation of the rotator cuff but wear and tear in the tendon itself. She was placed on modified work activities, and Dr. Kibler found that as long as she was on modified duties she performed well, but when returned to line sanding her symptoms returned. A second MRI revealed "fraying, a lot of irregularity in the superior surface, which went along with the extrinsic compression." By May 1997, Dr. Kibler felt that surgery should be considered.

She next saw Dr. Frank Burke, who agreed with Dr. Kibler's assessment of the injury. She was again placed on restrictions in July 1998, after a brief period in another capacity that did not involve overhead work. By August 1998, Dr. Burke felt that she would need to be placed on permanent restrictions of no overhead work, and assigned her an impairment rating of 3 to 4 percent in September 1998. In January 1999, she returned to Dr. Burke with symptoms of discomfort in her shoulder and a burning at the base of her neck extending into both shoulders. Dr. Burke performed arthroscopic surgery in March 1999, on her right shoulder, and she was returned to work without restrictions in May 1999. Dr. Burke assessed an impairment rating of 7 to 8 percent. After being informed that she would again be returned to the same department at Toyota, Czarnecki resigned.

Dr. Burke testified at the hearing that he did not believe that Czarnecki's condition was a recurring condition that began in 1992. He specifically testified that he believed it was a more recent injury, and that her condition had deteriorated over a couple of years. He stated that it was unusual for problems to recur only every two to three years, and that if the original injury had been in 1992, as claimed by Toyota, her condition would have deteriorated much faster. He noted that her medical history showed that prior problems were considered resolved.

The ALJ concluded that Czarnecki was 40 percent occupationally disabled due to work-related cumulative trauma to her right shoulder. The ALJ found that the injury was cumulative under *Haycraft v. Corhart Refractories, Co.*, Ky., 544 S.W.2d 222 (1976). The ALJ further believed that Czarnecki's first complaints began in 1990 and resulted from the entirety of her work with Toyota. The ALJ then relied on *Special Fund v. Clark*, Ky., 998 S.W.2d 487 (1999), to find that

[I]t is evident that the plaintiff sought care from Industrial Health Services as

early as 1990 to 1994. It is also evident that her problems were all always linked to the repetitive nature of her work in which she was performing at the time of her complaints. The Administrative Law Judge finds that this knowledge would trigger the statute of limitations found in KRS 342.185. The Administrative Law Judge further finds that her visits to Industrial Health Services on each of these occasions also gave the defendant-employer due and timely notice of the plaintiff's cumulative trauma injury. As the plaintiff filed her claim on December 11, 1996 after the first manifestation of disability on January 10, 1990, it is clear that the plaintiff had worked for the defendant-employer for a period of six years and eleven months after the first manifestation of disability prior to filing her cumulative trauma claim. Having found that the entirety of the plaintiff's work with the defendant-employer contributed to her disability, the statute of limitations had ran [sic] on all but 29% of her cumulative trauma claim. Therefore, the Administrative Law Judge finds that the plaintiff had an occupational disability as a result of a work-related cumulative trauma injury and that 29% of her total occupational disability is compensable and the remaining 71% is non-compensable as being barred by the statute of limitations.

■ The Board, in reversing the ALJ's decision, held that the cases of *Clark* and *Alcan Foil Products v. Huff*, Ky., 2 S.W.3d 96 (1999), were distinguishable from the facts of the present case. In *Alcan Foil Products*, the injuries involved were shown to be progressing through repeated testing. In *Clark*, the matter was remanded to the ALJ for a more specific finding concerning when the claimant became aware of the development of the degenerative condition in his knees. In the present case, the Board held that the pro-

gression of the condition was not shown; indeed, the rather detailed medical evidence revealed that the condition was not progressing from the previous injuries. The evidence showed periods of exacerbation followed by periods of improvement. It was not until 1998 that permanent restrictions were imposed. The Board concluded that the Supreme Court in *Clark* and *Alcan Foil Products* "seems to put the burden upon the claimant to determine when the nature of the job is causing cumulative trauma and injury to that individual. It is at this point the claimant must file a claim. We believe that when the employer's health department informs the claimant that the work is not causing injury and any condition has been resolved, the · statute of limitations should not continue to run." We agree.

■ Toyota argues that the Board substituted its findings of fact for that of the ALJ, without meeting the standards of *Paramount Foods, Inc. v. Burkhardt*, Ky., 695 S.W.2d 418 (1985), which requires that when a party with the burden of proof is unsuccessful at persuading the ALJ of their version of the facts, the evidence must be so overwhelming as to compel a finding in her favor in order to reverse the ALJ's decision. For evidence to be so compelling, it must be so overwhelming that no reasonable person could reach the same conclusion as the ALJ. *REO Mechanical v. Barnes*, Ky.App., 691 S.W.2d 224 (1985). Toyota relies on *Western Baptist Hospital v. Kelly*, Ky., 827 S.W.2d 685 (1992), for the proposition that the evidence must be either patently unreasonable or flagrantly implausible for a reviewing body to reverse the decision of an ALJ. This is true, when the question is exclusively one of fact. However, in the present case, we are not confronted with a question of fact but a question of law: whether the statute of limitations is tolled

when a worker is informed that her condition is resolved and not progressing. The Board did not need to substitute its findings for that of the ALJ, as it was undisputed that Toyota's IHS physicians had informed Czarnecki that her condition had fully healed. The Board needed only to decide what the law required in these circumstances, and it was proper for the Board to hold that the ALJ misapplied the law.

We hold that the statute of limitations is tolled in a cumulative injury case when a worker is informed that her injury is not progressing. In the present case, we find it very significant that in the course of her treatment, Toyota's IHS physicians told Czarnecki that her injuries had resolved, or put another way, had fully healed, prior to the 1996 injury that is the basis of this claim. We hold that Toyota is bound by the statements of the physicians it employs to tend its workers, and that Czarnecki was entitled to rely on the judgment of the IHS physicians when she elected not to file a claim prior to the 1996 injury. The statute of limitations should not operate to bar Czarnecki or a similarly situated worker from being fully compensated for her disability.

The decision of the Workers' Compensation Board is affirmed.

ALL CONCUR.