RENDERED: JUNE 16, 2016
TO BE PUBLISHED

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

2015-SC-000381-WC

TOYOTA MOTOR MANUFACTURING,
KENTUCKY, INC.                                                      APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                    CASE NO. 2014-CA-001752-WC
WORKERS' COMPENSATION BOARD NO. 12-WC-85293


JASON TUDOR;
HONORABLE STEPHEN G. BOLTON,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                         APPELLEES


**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>VACATING AND REMANDING</u>**

An Administrative Law Judge (ALJ) awarded Jason Tudor income

benefits for a series of work-related injuries. The Workers' Compensation

Board (the Board) and the Court of Appeals affirmed that award. Toyota Motor

Manufacturing, Kentucky, Inc. (Toyota) seeks review of those opinions. For the

reasons set forth below, we vacate the ALJ's opinion and award and remand

this matter to the ALJ for additional findings.

## I. BACKGROUND.

Tudor alleged that he suffered work-related cumulative-trauma back

injuries on March 23, 2010, December 23, 2010, and April 16, 2012. The first

injury occurred when Tudor was working on the Trim II line, which required him to get into and out of car bodies and to repetitively bend and twist. Following this injury, Tudor received treatment through Toyota's in-house medical facility (IHS), underwent an MRI, and was evaluated by a neurosurgeon, Dr. Steven Kiefer. After a period of restricted activity in the plant, Tudor returned to his regular duties.

On December 23, 2010, Tudor felt his back "lock up" while installing a master cylinder. He again underwent treatment at IHS, had a follow-up visit with Dr. Kiefer, and underwent treatment with his chiropractor. Because the plant was shut down over the holidays, Tudor did not miss any time from work as a result of this injury. However, when the plant re-opened, Tudor returned to restricted duty for approximately three months. Thereafter, Tudor began working on the I.P. line, which did not require sitting, an activity that aggravated Tudor's back.

Finally, on April 16, 2012, Tudor reported to IHS before the beginning of his shift and reported that he woke up with pain in his back radiating into his legs. He also complained of chest pain. IHS personnel sent Tudor to his chiropractor, and Tudor returned to work. However, Tudor's back and chest pain became too intense to continue working, so he went to the emergency room.

Following this last injury, a claims representative for Toyota's third party administrator (the TPA) advised Tudor that his claim for workers' compensation benefits was being denied. The TPA denied Tudor's claim for the March 2010

2

injury based on the statute of limitations and for the December 2010 and April 2012 injuries based on the belief that Tudor's condition was not work-related. Shortly thereafter, Tudor filed an application for adjustment of injury claim, alleging three cumulative-trauma injuries. He also alleged that he had herniated discs at L4-5 and L5-S1. Toyota filed a notice of claim denial and a special answer asserting, in pertinent part, that Tudor had not timely filed his claim. In support of this defense, Toyota argued that Tudor's condition was the result of the March 23, 2010 injury and that he had not filed his claim within two years of that injury date.

For his proof, Tudor filed records from IHS and Dr. Kiefer; a report from Dr. John Guarnaschelli; the transcripts of the depositions of Tudor's group leader, Mickey Payne, and the TPA claims representative, Jennifer Lyons; and affidavits from the Commissioner of the Department of Workers' Claims (DWC) indicating that Toyota had not filed any documentation regarding Tudor's injuries. Toyota filed the transcript of Tudor's deposition, a report from Tudor's family physician Dr. Raymond Wechman, and wage records from April 5, 2009 to March 21, 2010 and from April 4, 2010 to January 5, 2014. The record also contains the transcript of Tudor's testimony at the formal hearing. We summarize that evidence as well as the opinions of the ALJ, the Board, and the Court of Appeals below.

**Tudor Deposition and Hearing Testimony**

Tudor testified regarding his injuries and his physical complaints. He also testified in pertinent part that, when he was on restricted duty, he received

3

his regular rate of pay. However, he did not receive any overtime and, when he was at Toyota, he just "stood around" most of the time or performed work that was not normally part of his or any other employee's regular work duties.

As to his medical care, Tudor testified that he treated with IHS physicians following each injury and that he treated with a chiropractor and Dr. Kiefer on referral from IHS. As part of that treatment, Tudor underwent a lumbar MRI in July 2010. He testified that, although the MRI report stated that he had two herniated discs, the IHS physician advised him that he only had bulging discs. Tudor also testified that he had undergone a second MRI in 2012 so that his physician could determine if his herniated discs had gotten worse. Finally, Tudor testified that no one at IHS told him his condition was the result of a personal injury; however, the claims representative did.

**IHS Records**

The IHS records reveal that Tudor first sought treatment for the March 2010 injury on May 12, 2010. Tudor complained of back pain without radicular symptoms that began two months earlier. Dr. Reyes, the IHS physician, made a diagnosis of "sprain strain unspecified site back," prescribed medication, and returned Tudor to work with restrictions. Tudor continued to treat with Dr. Reyes, who recommended physical therapy and continued Tudor's restrictions. When Tudor's condition did not improve, Dr. Reyes referred Tudor for an MRI, which he underwent at Lexington Clinic on July 8, 2010. The radiologist read that MRI as showing "disc herniations at L4/5 and L5/S1. The disc extrusion at L4/5 abuts the descending L5 nerve roots

4

without displacement or mass effect on the roots. The protrusion at L5/S1 is associated with annular tearing." Dr. Reyes continued Tudor's restrictions and referred him to Dr. Kiefer for evaluation.

Dr. Reyes's August 17, 2010 office note indicates that Dr. Kiefer told Tudor that he had degenerative disc disease and was not a candidate for surgery. Dr. Reyes continued to treat Tudor conservatively, and she released him to return to regular duty work in mid-September 2010. In late September, Dr. Reyes noted that Tudor was still having low back pain with radiation into his mid-back. She advised him to continue seeing his chiropractor and to continue working full duty. On November 8, 2010, Dr. Reyes noted that Tudor was doing better and released him to follow up as needed.

Tudor did not return to IHS until December 23, 2010, when he complained that his back pain had returned and that it was radiating into both hips. As noted above, Dr. Reyes sent Tudor home from work and he did not return to IHS until January 3, 2011, at which time Dr. Peace (another IHS physician) referred Tudor back to Dr. Kiefer. Dr. Reyes continued to treat Tudor through mid-March 2011 at which point Tudor was moved to the I.P. line.

Personnel at IHS next saw Tudor on April 20, 2012, when he complained of chest, rib, back, and leg pain. The office note indicates that Tudor had been to the emergency room where he underwent a cardiac evaluation, which was negative. Tudor treated at IHS two more times in April 2012 for complaints of back pain with radiation into both legs.

5

**Dr. Kiefer**

Dr. Kiefer first saw Tudor on August 13, 2010 for complaints of back pain. Dr. Kiefer read Tudor's July 2010 MRI as showing "broad-based prominent disc bulging at L4-5" with "no focal root compromise" or "high-grade stenosis." Additionally, Dr. Kiefer noted "a central annular tear and some disc bulging" at L5-S1. He made a diagnosis of degenerative disc disease that "may have flared up in his heavy work setting."

On January 7, 2011, Dr. Kiefer noted that Tudor was doing better but that his symptoms had "flared." Dr. Kiefer continued his diagnosis of degenerative disc disease, prescribed medication, and recommended continued chiropractic care and light duty work. Dr. Kiefer last saw Tudor on February 18, 2011 when he noted that Tudor was feeling "better."

**Dr. Guarnaschelli**

Dr. Guarnaschelli performed an independent medical evaluation of Tudor on August 13, 2012.[1] Tudor reported that he had the onset of back pain in March 2010 and that he had additional incidents of back pain in December 2010 and April 2012. Dr. Guarnaschelli noted that Tudor did not report any specific traumatic events.

Tudor complained to Dr. Guarnaschelli of low back pain with radiation into both hips and occasional left leg numbness. Dr. Guarnaschelli's examination revealed nearly normal range of motion, tenderness over the lumbosacral area, and normal straight leg raising. He noted that Tudor's 2010

---

[1] It is unclear from the record who requested this evaluation.

6

MRI revealed disc herniations at L4-5 and L5-S1 and that his 2012 MRI revealed small L4-5 and L5-S1 disc protrusions without convincing nerve root compression. Dr. Guarnaschelli made a diagnosis of "signs and symptoms of a painful lumbar disk entity and mechanical low back pain, with both clinical and radiographic evidence of multilevel lumbar spondylosis and degenerative changes." He assigned Tudor a 5% impairment rating and restricted him from heavy lifting, repetitive bending, and overhead work. Finally, Dr. Guarnaschelli recommended that Tudor continue with conservative care and that he not consider surgery.

**Deposition of Mickey Payne**

Payne was Tudor's group leader in March of 2010. According to Payne, Tudor performed quality checks, light cleaning and sweeping, and sorted screws and other small parts while working on restricted duty. Payne admitted that these tasks were not generally assigned to any one employee and were not part of a specific job classification. However, he also stated that no one just stands around and that if work is not available within an employee's restrictions, the employee is sent home.

**Deposition of Jennifer Lyons**

Lyons is a claims representative for Toyota's third party administrator. As such, she handles work-related injuries for Toyota, which is self-insured. Lyons did not begin handling Tudor's file until January 2011, and she gave up the file when this matter went into litigation. As part of handling a file, Lyons knows that she is required to file on behalf of Toyota a first report of injury and

documentation regarding payment of temporary total disability (TTD) benefits. She did not file those forms herein because Tudor did not miss any time from work. When asked what she considers work, Lyons said that she does not concern herself with whether an employee is performing "make work" or regular duty work. If an employee reports to the plant and is paid, Lyons deems him to be working.

As to Tudor's alleged injuries, Lyons denied coverage for the March 2010 injury because Tudor's statute of limitations had expired. She denied coverage for the other two alleged injuries because she believed they were not work related.

**Dr. Wechman**

Dr. Wechman's April 17, 2012 office note, the only one filed, indicates that Tudor had suffered intermittent back pain for a long period of time. Tudor reported to Dr. Wechman that he woke up the preceding day with back pain but reported no particular injury. According to Dr. Wechman, Tudor reported that he underwent an EKG at Toyota and then went to the emergency room. Dr. Wechman noted that Tudor had previously undergone an MRI, which showed bulging discs, and he made a diagnosis of sacroiliitis.

**The ALJ's Opinion**

Before the ALJ, Toyota argued that Tudor's condition was the result of his March 23, 2010 injury and that he had not filed his claim within the applicable statutory period. Tudor argued that his statutory period did not expire because Toyota did not notify the DWC of its failure to pay TTD benefits

when due. Based on Dr. Guarnaschelli's report, Tudor argued for an award of permanent partial disability benefits based on a 5% impairment rating with a three times multiplier. Finally, Tudor argued that he was entitled to an award of TTD benefits during the periods when he was not performing legitimate work.

The ALJ, in a 54 page opinion, found that Tudor suffered a work-related injury on March 23, 2010 "with subsequent cumulative exacerbations, all of which were related to, and caused by, his work." He then awarded Tudor permanent partial disability benefits based on Dr. Guarnaschelli's 5% impairment rating. The ALJ increased that benefit three-fold pursuant to Kentucky Revised Statute (KRS) 342.730(1)(c)1 because he found that Tudor could not return to his pre-injury work. The ALJ did not make a finding regarding Tudor's post-injury wages.

Additionally, the ALJ found that Toyota had failed to meet its burden of proving that Tudor had not timely filed his claim for two reasons: (1) the physicians at IHS had misled Tudor as to the nature of his condition; and (2) Tudor was entitled to TTD benefits during the periods of restricted work, and Toyota had not filed notice with the DWC that it was not paying those benefits. According to the ALJ, both of these entitled Tudor to an equitable tolling of the statute of limitations.

As to the first reason, the ALJ found it significant that Dr. Reyes, who had a copy of the July 2010 MRI report showing a diagnosis of herniated discs, told Tudor he only had bulging discs. Furthermore, the ALJ found it

9

significant that Tudor was not referred to a specialist until January of 2011, when Dr. Peace referred him to an orthopedic surgeon. Finally, the ALJ found it significant that "company health providers . . . informed [Tudor] that his symptoms were not work-related." According to the ALJ these actions by Toyota resulted in Tudor being "misinformed as to the true nature of his injury[,]" which prevented him from receiving "appropriate medical treatment" and led to "later exacerbations of that condition," which presumably referred to Tudor's lumbar disc condition. We note that the ALJ never specifically found that Tudor had herniated discs, referring to Tudor's condition as "possible disc herniations." Based on the preceding, coupled with Toyota's "full employment tailored to [Tudor's] restrictions," the ALJ determined that Tudor had been "lulled into believing he was improving" which resulted in his failure to timely file his claim. Therefore, the ALJ tolled the statute of limitations.

As to the second reason, the ALJ found that Tudor was entitled to TTD benefits for the periods of time he was working restricted duty. The ALJ then found that Toyota, because it was not paying those benefits, was required to file notice of its failure to pay with the DWC pursuant to KRS 342.040. Because Toyota had not filed that notice, the ALJ concluded that Tudor's statute of limitations had been tolled. We address issues with the ALJ's opinion in the analysis section of this opinion below.

**The Board's Opinion**

The Board affirmed the ALJ, relying primarily on Toyota's failure to comply with the reporting requirements of KRS 342.040.

10

[T]his case turns upon the reporting requirements of KRS 342.040. That provision requires an employer who fails to make TTD payments when due to notify the Commissioner. Toyota believes the reporting requirements of KRS 342.040 are not triggered and it is not required to file a first report of injury if it chooses to keep an employee on restricted duty and pay wages in excess of the TTD benefit amount. The statute refers to benefits being payable when _disability_ exceeds seven days. Certainly the absence from work as a result of an injury is evidence of disability. However, an individual who has not reached a level of improvement is under a disability. If that disability extends for more than seven days, TTD benefits are payable, triggering the employer's responsibility to notify the commissioner pursuant to KRS 342.024(1). Toyota's failure to notify the commissioner of its refusal to pay TTD benefits resulted in Tudor not receiving notice of his right to prosecute his claim. The ALJ correctly determined the statute of limitations is tolled by the failure to notify the Department TTD benefits were not being paid.

(Emphasis in original).

The Board also addressed the ALJ's tolling of the statute of limitations based on the failure of IHS personnel to advise Tudor "of his true condition." According to the Board, "IHS staff led Tudor to believe he had bulging discs resulting from non-work-related causes" which supported the ALJ's decision to equitably toll the statute of limitations. The Board noted that, even if "the ALJ drew improper inferences from the evidence regarding Tudor being lulled into thinking he did not need to file a claim or that the misdiagnosis resulted in his not seeking outside treatment," any error was harmless in light of Toyota's violation of KRS 342.040.

Finally, the Board found that the ALJ's decision to apply the three times multiplier was correct because there was ample evidence that Tudor could not return to the type of work he performed at the time of his injury and his post-

11

injury wages did not equal or exceed his pre-injury wages. We address issues with the Board's opinion in the analysis section below.

**The Court of Appeals's Opinion**

The Court of Appeals affirmed the Board and the ALJ's finding that Toyota failed to adequately inform Tudor of his condition. *Toyota Motor Manufacturing Kentucky, Inc. v. Tudor*, 2014-CA-001752-WC, 2015 WL 4605758 (Ky. App. June 19, 2015). In doing so, the Court of Appeals, based on the July 2010 MRI report, made a finding of fact that Tudor had two herniated discs. *Id.* at *2. The Court also concluded that the IHS physician "knew that Tudor had two herniated discs." *Id.* Finally, on this issue, the Court found that

> An employer's in-house physician must inform its employee of relevant diagnoses . . . [o]therwise the physician's silence may lull the employee into a false sense of security as it relates to his personal and financial health, deterring him from filing a timely claim just as if the physician had affirmatively represented his condition had healed. This is especially so when the in-house physician tells the employee his injury is not work-related.

*Id.*

As to Tudor's entitlement to TTD benefits, the Court noted testimony from Payne and Tudor that Tudor was not performing regular work activity during the periods of restricted duty. *Id.* at *3. Based on the preceding, the Court concluded, as did the ALJ and the Board, that Tudor was entitled to TTD benefits and that Toyota did not report its failure to make TTD benefit payments to the DWC. *Id.* at *3-4. That failure to report tolled Tudor's statute of limitation. *Id.* at *4.

12

As to the three times multiplier, the Court of Appeals agreed that sufficient evidence supported the ALJ's finding that Tudor was not capable of returning to the type of work he performed at the time of his injury. *Id.* The Court then stated that there was insufficient evidence to support a finding that Tudor's post-injury wages equaled or exceeded his pre-injury wages. Thus, it affirmed the ALJ's award of benefits. *Id.* at *5. We address issues with the Court of Appeals's opinion in the analysis section below.

### III. ANALYSIS.

The ALJ has the sole discretion to determine the quality, character, and substance of the evidence and may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same party's total proof. *Khani v. Alliance Chiropractic*, 456 S.W.3d 802, 806-07 (Ky. 2015). However, the parties are entitled to an opinion that has been "decided upon the basis of correct findings of basic facts." *Cook v. Paducah Recapping Serv.*, 694 S.W.2d 684, 689 (Ky. 1985). That is not the case here.

### A. The ALJ's Opinion – Statute of Limitations.

KRS 342.185 provides that an injured employee must file his claim within two years of the date of accident or the date of last TTD benefit payment. However, an employer can be equitably barred from asserting the statute of limitations as a defense in two relevant circumstances: if the employer's in-house physician incorrectly advises an employee that a repetitive trauma injury has resolved, *Toyota Motor Mfg., Kentucky, Inc. v. Czarnecki*, 41 S.W.3d 868,

13

872 (Ky. App. 2001); and, if the employer fails to file certain reports mandated by KRS 342.040(1), *City of Frankfort v. Rogers*, 765 S.W.2d 579 (Ky. App. 1988). The ALJ, recognizing that this case differs somewhat from *Czarnecki*, found that Toyota was barred from asserting the statute of limitations under both *Czarnecki* and *Rogers*. We address the ALJ's application of each below.

## 1.    Application of *Czarnecki.*

In applying *Czarnecki*, the ALJ found that IHS personnel had misrepresented Tudor's condition to him; that IHS personnel had not timely referred Tudor to a specialist; and that IHS personnel had advised Tudor that his condition was not work-related. As to Tudor's condition, the ALJ stated that Tudor possibly had herniated discs and that IHS personnel only advised him that he had bulging discs. Based on this understanding of the record, the ALJ concluded that IHS personnel did not advise Tudor of his "true condition." If the evidence was undisputed that Tudor did have herniated discs, the ALJ's finding would be acceptable. However, not every physician agreed with that diagnosis. The MRI report stated that Tudor had herniated discs. However, Dr. Kiefer found that Tudor had bulging discs, an opinion Dr. Reyes echoed. Dr. Guarnaschelli stated that Tudor's July 2010 MRI showed herniated discs; however, he stated that Tudor's 2012 MRI showed only protruding discs, a statement that the ALJ failed to mention. Therefore, it is unclear from the evidence what Tudor's "true condition" was, and the ALJ never found whether Tudor had herniated or bulging/protruding discs. Before the ALJ can conclude

14

that IHS personnel misrepresented Tudor's condition, he must determine what that condition was.

Furthermore, the ALJ's finding that IHS personnel did not refer Tudor to a specialist until January 2011 is incorrect. Dr. Reyes referred Tudor to Dr. Kiefer, a neurosurgeon, in July 2010. Finally, the ALJ's statement that Toyota "health providers" advised Tudor that his condition was not work related is also incorrect. Tudor specifically testified that no one at IHS told him that his condition was "personal", *i.e.* not work related. Lyons, who denied Tudor's December 2010 and April 2012 claims as being not work related, was not a member of Toyota's health providers. Furthermore, Lyons did not deny coverage for the March 2010 injury, the injury the ALJ found was the cause of Tudor's condition, because it was not work related. She denied coverage for that injury because of the statute of limitations.

Thus, the ALJ's finding that Toyota was equitably barred from asserting the statute of limitations under *Czarnecki* was based on an apparent misunderstanding of the evidence. That does not mean *Czarnecki* could not have any application to this claim; however, any application of *Czarnecki* must be based on a correct understanding and recitation of the evidence and appropriate factual findings.

### 2. Application of *Rogers* and Award of TTD Benefits

The ALJ found that Toyota was obligated to pay TTD benefits to Tudor during periods when he was on restricted duty and awarded Tudor those benefits. After the ALJ rendered his opinion, this Court rendered *Trane*

15

*Commercial Systems v. Tipton*, 481 S.W.3d 800 (Ky. 2016). In *Tipton*, the Court set forth factors the ALJ should consider when determining if an employee who has returned to employment is also entitled to TTD benefits. Because the ALJ could not have considered those factors, this matter is remanded to the ALJ for that consideration. We note that, if the ALJ determines on remand that Toyota should have paid TTD benefits to Tudor, he can award those benefits accordingly and apply the *Rogers* analysis.

### 3. Three Times Multiplier.

KRS 342.730 (1)(c) provides for enhancement of benefits under two pertinent situations. If "an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise" payable. KRS 342.730(1)(c)1. "If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit" shall not be enhanced; however, "[d]uring any cessation of that employment . . . payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable." KRS 342.730(1)(c)2. If an employee falls within both KRS 342.730(1)(c)1 and 2, the ALJ must determine if the employee is likely "to be able to continue earning a wage that equals or exceeds the wage at the time of injury for the indefinite future." *Fawbush v. Gwinn*, 103 S.W.3d 5, 12 (Ky. 2003).

16

The ALJ found that Tudor is entitled to the three times multiplier because he cannot return to the type of work he performed at the time of injury. That finding is supported by the record, as every physician restricted Tudor to work activity that differed from what he was performing in March 2010. However, because the ALJ believed that Tudor was entitled to those benefits regardless of his post-injury average weekly wage, the ALJ did not make a finding regarding that wage. Therefore, this matter must be remanded for the ALJ to determine whether Tudor's post-injury wage equals or exceeds his pre-injury wage. If the ALJ finds that Tudor's post-injury wage does so, the ALJ must determine if it is likely that Tudor will be able to continue earning that wage for the indefinite future.

**B.    The Board's Opinion**

The Board affirmed the ALJ and adopted some of his misstatements regarding the evidence. In particular, the Board adopted the ALJ's statements that IHS staff advised Tudor that his condition was not work-related and that IHS did not inform Tudor of his "true condition." We need not further address those statements. However, we do want to correct a mischaracterization of the law by the Board.

When addressing Tudor's entitlement to payment of benefits using the three times multiplier, the Board prematurely determined that the ALJ was not required to undertake a *Fawbush* analysis. The Board noted that Tudor was earning a greater hourly rate at the time of the hearing and that the parties stipulated that Tudor's average weekly wage for the December 2010 and April

17

2012 injuries was less than the average weekly wage for the March 2010 injury. The problem with the Board's analysis is that post-injury average weekly wage is to be calculated the same way pre-injury average weekly wage is. *Ball v. Big Elk Creek Coal Co., Inc.,* 25 S.W.3d 115, 117–118 (Ky. 2000). Thus, the ALJ is required to look at the wages Tudor earned in the fifty-two week period following the injury, which the ALJ determined to be March 23, 2010. He must then find the highest quarter in that fifty-two week period and determine if that is equal to or greater than Tudor's pre-injury average weekly wage. We note the Board stated that "there is insufficient evidence to establish [Tudor] was earning the same or greater average weekly wage" post-injury. However, based on our review of the record, there appear to be sufficient wage records for the ALJ to make that determination. If the ALJ determines that Tudor's post-injury average weekly wage does not equal or exceed his pre-injury wage, then the ALJ need not undertake the remainder of the *Fawbush* analysis. However, the ALJ, as fact finder, must first make a finding as to Tudor's post-injury average weekly wage. The stipulations regarding Tudor's average weekly wage in December 2010 and April 2012 may be determinative of this issue; however, making that determination is one for the ALJ, not the Board.

## C.    The Court of Appeals's Opinion

The Court of Appeals, like the Board, adopted several of the ALJ's misstatements regarding the evidence. We need not address those statements further. However, we note that the Court of Appeals stated that "because a

18

physician's MRI report is sufficient evidence for an ALJ to find an individual suffered from a certain medical condition as a matter of fact, we conclude that Tudor had two herniated discs." *Tudor*, 2014-CA-001752-WC, 2015 WL 4605758 at * 6. That is a finding of fact and the ALJ is the fact finder, not the Court of Appeals. *See Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). If the MRI report was the only evidence regarding the condition of Tudor's lumbar spine, this fact finding by the Court of Appeals might be harmless. However, as noted above, two physicians, Drs. Reyes and Kiefer, said that Tudor had only bulging discs in 2010. Furthermore, the only physician to address Tudor's 2012 MRI read it as showing protruding discs. Therefore, there is disputed evidence in the record regarding Tudor's "true condition" and the ALJ, as fact finder, must determine what that condition is.

Finally, we note that the Court somewhat mischaracterizes the analysis an ALJ must undertake when both KRS 342.730(1)(c)1 and 2 apply when it stated:

> Although the ALJ noted Tudor's wages were 'a little higher' after returning to work and that 'he actually worked a lot of overtime' in 2013, this is not enough to indicate Tudor would continue to earn a weekly wage equal to or greater than his average weekly wage at the time of injury. The ALJ attributed Tudor's wage increase on return to six-month reviews and did not specify whether he would to [sic] be able to continue to work overtime. Accordingly, because we agree with the Board that *Fawbush* requires both KRS 342.730(1)(c)1 and 2 to apply, we will not set aside the ALJ's award of the triple multiplier.

*Tudor*, 2014-CA-001752-WC, 2015 WL 4605758 at *5.

To be clear, if an ALJ finds that an injured employee "does not retain the physical capacity to return to the type of work that the employee performed at

19

the time of injury" as set forth in KRS 342.730(1)(c)1 and relevant case law, the ALJ shall award benefits at three times the rate otherwise payable. However, if the ALJ also determines that the employee is earning a wage equal to or greater than the pre-injury wage, the ALJ must then determine if the employee is likely to do so for the foreseeable future. If the ALJ determines that the employee is not likely to do so, then the employee is entitled to receive benefits at three times the rate otherwise payable. If the ALJ determines that the employee is likely to continue earning the equal or greater post-injury wage, then the employee is not entitled to the three times multiplier. Here, the ALJ determined that Tudor lacks the physical capacity to return to the type of work he performed at the time of his injury. However, the ALJ did not make any determination regarding the amount of Tudor's post-injury wages. The Court of Appeals cannot make that finding for him. Finally, we note that the ALJ does not need to make any findings regarding the likelihood that Tudor will continue to earn the post-injury wage until he determines what that wage is.

## IV. CONCLUSION.

The ALJ's opinion is vacated and this matter is remanded to the ALJ because: his application of *Czarnecki* is based on a misunderstanding of the record; his finding that Tudor was entitled to TTD benefits and his consequent application of KRS 342.040 were made prior to *Trane Commercial Systems v. Tipton*, 481 S.W.3d 800 (Ky. 2016); and his finding that Toyota was barred from asserting the statute of limitations was based on the preceding. Following a correct reading of the record and application of *Tipton,* the ALJ may determine

20

that Toyota is barred from asserting the statute of limitations. In that case, the ALJ may reinstate his award of permanent partial and temporary total disability benefits as appropriate. However, the ALJ may not award Tudor benefits based on the three times multiplier until he undertakes the appropriate analysis as set forth above.

All sitting. Minton, C.J., Cunningham, Hughes, Keller and Venters, JJ., concur. Wright, J., concurs in part and dissents in part by separate opinion in which Noble, J., joins.

WRIGHT, J., CONCURRING IN PART AND DISSENTING IN PART: While I concur with the remainder of the opinion, I dissent as to the majority's application of *Toyota Motor Mfg., Kentucky, Inc. v. Czarnecki*, 41 S.W.3d 868, 872 (Ky. App. 2001). The majority takes fault with the ALJ's statement that Toyota's doctor did not inform Tudor of his "true condition," pointing out that not all of the medical professionals agreed as to the diagnosis of disc herniations. However, even if Toyota's doctor disagreed with the MRI report, she was still obligated to inform Tudor of the potential herniations. The ALJ did make a finding as to the discs: he found Toyota failed to "inform [Tudor] that he suffered from two possibly herniated discs." I disagree that the ALJ had to decide whether they were or were not herniated in order to find that the statute was tolled. Toyota's failure to disclose this potential condition, as found by the ALJ and evinced by the MRI report, was enough to toll the statute of limitations. The ALJ was in the best position to weigh all of the evidence and

21

to choose what and whom to believe. He did just that. Therefore, I would affirm on this ground.

Noble, J., joins.


COUNSEL FOR APPELLANT:

Kenneth J. Dietz
Lucas & Dietz, PLLC


COUNSEL FOR APPELLEE, JASON TUDOR:

Thomas Bennett Clark
Clark Law Office, Inc.