# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 15, 2017
NOT TO BE PUBLISHED

**Supreme Court of Kentucky**

FINAL

2016-SC-000527-WC

DATE 7/6/17 Kim Redmon, DC

FLAT ROCK FURNITURE                                                                APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2015-CA-001255-WC
WORKERS' COMPENSATION BOARD
NO. 11-WC-70462

STEVEN NEELEY;                                                                APPELLEES
HON. WILLIAM J. RUDLOFF,
ADMINISTRATIVE LAW JUDGE;
AND KENTUCKY WORKERS'
COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

In 2011, 52-year-old Steven Neeley (Neeley), was working as a machine operator at Flat Rock Furniture (Flat Rock), in Jackson County, Kentucky. On October 10, 2011, Neeley was bending a piece of wood when the wood slipped and hit him in the right eye causing injury. He provided notice to his manager, Clarence Ward, and sought treatment from Dr. Sheila Sanders, an eye specialist at the University of Kentucky Hospital.

Neeley filed his Form 101 Injury Claim Application on February 23, 2013, wherein he described the October 10, 2011 incident that injured his right eye. After numerous hearings, the Administrative Law Judge (ALJ)

considered depositions and live testimony, including multiple physicians who treated Neeley after his injury. And although there were variations concerning the severity of the injury, all of these physicians agreed that Neeley had suffered a significant injury to his right eye. Also, both parties stipulated that Neeley suffered a 17% whole person impairment rating. Based on this evidence, the ALJ awarded Neeley temporary total disability (TTD) benefits, permanent total disability (PTD) benefits, and medical benefits.

Flat Rock appealed several issues to the Workers' Compensation Board (Board), which reversed and remanded the case. The Board specifically instructed the ALJ to provide an adequate analysis of how he reached his determination of PTD benefits. The Board also directed the ALJ to address Neeley's alleged injury to his left eye.

On remand, the ALJ revised his original order but did not alter the type and amount of compensation awarded. Flat Rock appealed the revised order to the Board, which unanimously affirmed the ALJ. Flat Rock then appealed to the Court of Appeals, which unanimously affirmed the Board's decision. Flat Rock now appeals to this Court. Having reviewed the record and the law, we affirm the Court of Appeals.

## Standard of Review

In order to reverse, we must determine that the ALJ's findings were "so unreasonable under the evidence that it must be viewed as erroneous as a matter of law." KRS 342.285; *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000). This is clearly a difficult standard to satisfy.

2

## Analysis

Flat Rock raises three primary issues on appeal: 1) the ALJ relied on records that were not in evidence; 2) the ALJ flagrantly misconstrued the evidence and that there was no injury to Neeley's left eye; and 3) temporary restrictions do not support a PTD finding. Each will be discussed in turn.

***Erroneously Admitted Records***

Flat Rock specifically claims that the ALJ erroneously relied upon a November 27, 2012 treatment record completed by Dr. Sanders and accompanied by an attached handwritten note from Dr. Sanders that provided as follows:

> Mr. Neeley is visually impaired in his right eye and has intractable diplopia with severe light sensitivity. Currently we have exhausted all possibilities of improving his symptoms. I believe it is unlikely that he can return to work ever unless he experiences spontaneous improvement.

Neeley appended these contested records to his Form 101. However, Neeley did not append it to his Form 107-I, which is used for the specific admission of medical evidence. Because of this omission, Flat Rock argues that the report was improperly admitted.

Flat Rock specifically contends that Neeley failed to satisfy the requirements of 803 KAR 25:010. Section 8(4) of that regulation provides:

> (4) All medical reports filed with the application for resolution of a claim shall be admitted into evidence without further order subject to the limitations of KRS 342.033 if:
>
> > (a) An objection is not filed prior to or with the filing of the notice of claim denial; and

3

> (b) The medical reports comply with Section 10 of this
> administrative regulation.

Section 10 lists several methods by which a physician may authenticate their reports. In support of its argument in favor of excluding Dr. Sanders' medical report, Flat Rock cites the unpublished case of *Puckett v. Neal's Delivery Serv., Inc.*, No. 2009-CA-001550-WC, 2010 WL 1041054, at *5 (Ky. App. Mar. 19, 2010).

*Puckett* involved the ALJ's decision dismissing the claimant's workers' compensation case due to failure to submit objective medical evidence. The Court of Appeals affirmed the denial of the claimant's motion to reopen the case and, in so holding, excluded a medical report that failed to comply with the applicable provisions of 803 KAR 25:010 Section 10. Unlike *Puckett*, however, the facts of the present case demonstrate that Neeley substantially complied with the applicable regulations.

First, Flat Rock failed to object to Dr. Sanders' report that was attached to Neeley's Form 101. Second, the record demonstrates that Flat Rock is well aware of Dr. Sanders and her qualifications. In fact, Flat Rock submitted Dr. Sanders' index number in a separate letter drafted and signed by Dr. Sanders summarizing the November 27, 2012 examination. Third, the handwritten portion of Dr. Sanders' report was legible. It is clear that the purpose of 803 KAR 25:010 has been satisfied here.

Moreover, the report contested by Flat Rock is only one of numerous, detailed medical reports considered by the ALJ in reaching his final

4

determination. The ALJ also assigned great weight to Neeley's live testimony. There is no reversible error.

Lastly, Flat Rock also takes issue with a medical record referenced by the ALJ in his opinion as being dated January 20, 2013. The actual record to which the ALJ was referring was dated June 20, 2013. This is clearly a clerical error and, therefore, does not require reversal.

### *Misconstruing the Evidence*

Next, Flat Rock argues that the ALJ flagrantly misconstrued the evidence. As previously noted, several physicians involved in this case provided reports contesting the severity of Neeley's injury and how that impacted his ability to return to work. However, they all agreed that Neeley had suffered a significant injury to his right eye. Both parties also stipulated that Neeley suffered a 17% whole person impairment rating. Furthermore, it is clear from the ALJ's opinion that he afforded great weight to Neeley's *live* testimony at the final hearing in this case. As stated in his Amended Opinion and Order on Remand, the ALJ specifically based his decision on the following considerations:

> I took into consideration [Neeley's] sworn testimony that he has lost the vision in his right eye, has double and triple vision, is light sensitive in his left eye, does not drive a motor vehicle and cannot return to any employment. I took into consideration the fact that he graduated from high school many years ago and has absolutely no specialized or vocational training. I reached the reasonable assumption and determination that if Mr. Neeley went out into the highly competitive job market, he will have an extremely difficult time in finding any regular gainful employment. Based upon all of the above factors, I make the determination that Mr. Neeley cannot find work consistently under regular work circumstances and work

5

dependably. I make the determination that he is permanently and totally disabled.

It is well-settled that "[t]he ALJ has the sole discretion to determine the quality, character, and substance of the evidence and may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same party's total proof." *Toyota Motor Manufacturing, Kentucky, Inc. v. Tudor*, 491 S.W.3d 496, 503 (Ky. 2016). Therefore, the ALJ's reliance on the above cited evidence was proper and constitutes substantial evidence supporting an award of PTD benefits.

Flat Rock also argues that the ALJ erroneously determined that Neeley sustained an injury to his left eye. As previously noted, one of the reasons the Board originally reversed and remanded this case for additional information was due to the mischaracterization of evidence concerning Neeley's alleged injury to his left eye. In his amended order, the ALJ concluded in part that "Dr. Sanders was Mr. Neeley's treating eye specialist. She stated that he has right eye pain and photophobia in his left eye."

After considering the ALJ's corrected order, the Board and the Court of Appeals expressed additional concerns about the ALJ's treatment of this evidence concerning Neeley's alleged left eye injury. Nevertheless, both panels affirmed the ALJ's revised order.

We agree with Neeley concerning the evidence indicating a serious injury to his right eye. However, the parties have failed to specifically cite any record indicating Dr. Sanders' diagnosis of or reference to any ailment involving Neeley's *left* eye. However, other records indicate an impairment to Neeley's left

6

eye. For example, Dr. Ralph Crystal, a vocational consultant, indicated that Neeley reportedly experienced optic nerve pain in both eyes and light sensitivity in his left eye. Neeley echoed these concerns in his final hearing testimony. In addition, Flat Rock concedes on page 19 of its brief that "[a]fter the injury, Neeley began to complain to Dr. Sanders of debilitating symptoms in his left eye, consisting of extreme light sensitivity." Moreover, the ALJ's ultimate decision to award PTD benefits was clearly based on the severe injury to Neeley's right eye. Therefore, we cannot conclude that the ALJ lacked substantial information for his decision to award PTD benefits.

### Maximum Medical Improvement

For its final argument, Flat Rock asserts temporary restrictions do not support a PTD finding. Flat Rock specifically argues that the medical evidence the ALJ relied on to support a finding of PTD was dated before Neeley had reached maximum medical improvement (MMI). It is undisputed that Neeley's MMI occurred December 4, 2013. The Board aptly addressed this issue as follows:

> We first note that there is no blanket prohibition against reliance upon a physician's statement made prior to the attainment of maximum medical improvement. The particular statement was made by Dr. Sanders in the November 27, 2012 report. She indicated her concern Neeley would ever be able to return to work "unless he experiences spontaneous improvement." When considered in conjunction with Neeley's ongoing treatment after this statement was made, we believe it is probative of Dr. Sanders' impression of his overall condition. Stated otherwise, Dr. Sanders' subsequent medical records indicate Neeley never did experience "spontaneous improvement". Rather, his condition worsened and required further surgical intervention.

7

The Court of Appeals adopted the Board's reasoning. In further support of its conclusion, the Court of Appeals cited our case of *Arnold v. Toyota Motor Mfg.*, 375 S.W.3d 56 (Ky. 2012). Therein, we stated that "[a]lthough causation and the date of MMI are medical questions, a worker's testimony may provide adequate support for a finding concerning his inability to work at a particular point in time." *Id.* at 61. As previously noted, both parties stipulated that Neeley suffered a 17% whole person impairment rating and that the ALJ gave great weight to Neeley's live testimony. The ALJ also considered numerous medical records. Therefore, there was substantial evidence supporting the ALJ's determination.

## Conclusion

For the foregoing reasons, we hereby affirm the Court of Appeals' decision, affirming the decisions issued by the Board and the ALJ.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Thomas Clarke Donkin
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

COUNSEL FOR APPELLEE, STEVEN NEELEY:

McKinnley Morgan
MORGAN, COLLINS & YEAST